**KEMELHAR et, Plaintiffs-Appellees, v. KOHN, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24829.   Decided June 19, 1959.

Hollingsworth & Hollingsworth, for plaintiffs-appellees.
Richard C. Green, for defendant-appellant.

**OPINION**

By SKEEL, J:

This appeal comes to this court on questions of law from a judgment entered against the defendant by the Municipal Court of Shaker Heights. The defendant took her automobile to the Gulf Service Station located at Cedar and Green Roads in the City of University Heights, Cuyahoga County, Ohio, to have her car washed. One T. J. Norman operated a car wash at the station as his independent business. When the defendant arrived at the station, she asked Norman if he would drive her to her sister's home not too far distant from the station and return the car to be washed, and that her brother-in-law would bring her back when she was ready to pick up the car. The weather conditions were bad and the streets slippery. Norman refused at first to do as requested

because of the condition of the roads, but on the defendant's stating to him that she would be responsible for the car if anything happened while he was driving it, he carried out her request. On the way back to the service station, he had a collision with the automobile of the plaintiff, Dorothy Kemelhar, who carried fifty-dollar deductible collision insurance with the co-plaintiff, Merchants Indemnity Corp. of New York.

This action is brought to recover damage to the plaintiff Dorothy Kemelhar's automobile, then being driven by her husband, caused by the alleged negligence of Norman, the action being founded on the theory that Norman was then acting as the agent or servant of the defendant.

The fact that Norman was given control of the automobile of the defendant was the direct result of defendant availing herself of Norman's services as a car washer. So that, any attempt to create a relationship between the defendant and Norman different from that of independent contractors must be established outside the bargain of agreeing to wash defendant's car. The plaintiffs put complete reliance in making out their case on an agreement said to have induced Norman to go with the defendant to her sister's house to keep her engagement at that place, Norman testifying:

"She said, 'Well, I want you to take me up to a friend of mine,' a brother-in-law or something like that.

"And I told her, 'I don't want to do it today, because it is too slippery outside.'

"She said, 'Well, I want it done. If you go with me and bring my car back, I will have him bring me back,' after she looked at the football game.

"I didn't want to do it, because it was slippery. She said she would be responsible for it, so I took her up there.

"* * *

"She asked me to go and bring her car back—And do it, that she would be responsible for it. I can't deliver any cars unless people be responsible for it, because I can't get insurance to cover it—I didn't get insurance. I don't have that much business out there to buy insurance.

"* * *

"I told her that I didn't have insurance.

"* * *

"She said she was going to be responsible."

Another of plaintiffs' witnesses testified:

"Well, like so many others come in that day, she wanted a wash, and she asked Norman if he could wash the car. Norman said, 'Yes.'

"And she said, 'Well, would you take me up to'—I don't know where they were going—'and bring the car back and wash it'?

"He said, 'No, because it is too slippery out there.'

"And there had been a lot of accidents on that corner that morning, so—"

"* * *

"So he told her that if she would be responsible for the car in case anything should happen, that he doesn't carry insurance, if she would be

responsible if anything should happen, that he would take it up and bring her back."

Assuming, only for the purpose of the agreement, that the agreement suggested by this testimony (which is every word on the subject in the record) was concerned with more than damage to the defendant's car, which is indeed doubtful, the agreement in no sense shows the slightest intention of the parties to make Norman the defendant's employee. The whole deal had to do with washing the defendant's automobile. No control of Norman's conduct was suggested or attempted. The assurance he demanded clearly indicated he was not her servant As an independent contractor involving a small sum of money, he desired, because of the condition of the streets, to be held harmless from any liability, whether to the defendant's car or to other persons, that he might be subjected to in driving defendant's car, in furtherance of his own business. Not a word of evidence indicates that Norman was engaged in the business of driving automobiles of others as a servant of the owner. Nor is it a usual thing for employers to contract with their employees to hold them harmless for their (the employees') negligence.

The legality of attempting to indemnify one from liability because of his own negligence by contract has many times been questioned and in some cases held contrary to public policy. The statement of Norman shows that he wanted the assurance of defendant to assume liability if he should have an accident with her car as a result of his negligence because he did not have insurance. He thus directly indicated that he understood that he was acting as an independent contractor in his relation to the defendant.

Contracts between independent contractors of the character as here established by the evidence between Norman and the defendant are frequently encountered, while, within the recollection of this court, a contract btween an employer and his employee to indemnify such employee from loss that might be imposed upon him because of his negligence in carrying out his employer's business has never been encountered. From the evidence taken in its most favorable light in favor of the plaintiffs, there is no evidence to support the theory of the plaintiffs that Norman was the servant or employee of the defendant. In addition to the reasoning above set out as to the effect of an indemnifying agreement between Norman and the defendant, the practice known generally in the community that automobile service stations publicly offer services like those rendered to the defendant by Norman gives assistance to a reasonable interpretation of the evidence here presented. Such evidence does not make out a prima facie case on the plaintiffs' theory of defendant's liability. See **Councell v. Douglas, 163 Oh St 292, 126 N. E. 2d 597.**

For the foregoing reason, the judgment of the plaintiffs is reversed and final judgment is rendered for the defendant. Exceptions. Order see journal.

HURD, PJ, KOVACHY, J, concur.